uh hmm so what I'm going to do is I'm going to go ahead and get started. Okay. Next case is Mansfield. Council prepared to go forward? Yes, Your Honor. Okay. Mr. Kirkpatrick? Yes, Joel Kirkpatrick, Your Honors. You're reserving five minutes. I am, Your Honor. Thank you. May it please the Court. This matter is a pretty narrow issue, I think, before the Court. I think to differentiate between what the government's position is, is that my client believes that he was entitled to due process during the Mayor Board proceeding. Due process to try to find out if there's another punishment or another penalty that might be sufficient, a lesser penalty, on the issue of whether or not he should be indefinitely suspended. And by way of background... He has to have a security clearance. That's correct. And he was challenging that, Your Honor. I'm sorry? He was challenging that, Your Honor. He was challenging that through a separate proceeding with the Department of Justice. He had appealed to the Department of Justice... He was challenging the withdrawal, co-curtain. Yes. Just by way of background to help you, the Court... He's not challenging that he has to have one. No, he's not. That's never been our position. We've never tried to go into the merits of whether or not he should have a security clearance. I mean, I'm sorry, whether or not he should have... We're not challenging the merits of why they yanked his security clearance at this stage. They just indefinitely suspended him. And the agency came in in February of 2013, said, we're going to revoke your security clearance. We challenged that with the agency. In May 2013, they said, we are going to revoke now after we heard you. And we had an opportunity to challenge that to the Department of Justice, Maine Justice, the Access Review Committee. And that process didn't end until June of 2014. In the intermediate time when my client came back from Bogota, actually he was in a Cartagena office, came back to Miami, and they put my client in a restricted duty. They did a lot of duties. And it's laid out in my brief. I can go into it if the Court wants to see. We saw it. Yeah, you saw it. So the point is, is that my client wanted to challenge the indefinite suspension. They said, look, I've been working, I've been doing what I've been asked. The agency has no problem with me participating in doing work here in Miami. He was no longer assigned to a group, but he was assigned to the division office and doing all the things that you saw. And we want an opportunity to stay in that position pending the resolution of the Access Review Committee. Now, the charge down below, when the indefinite suspension occurred, didn't allow us to do discovery. Do you agree or disagree with the notion that the position that he was occupying while in this indefinite suspension is one that required him to have the security clearance that had been suspended? I don't think it did, Your Honor. I think the issue is this. The agency found a place to put him while he was in this thing. That's right, but that might have been just essentially an act of grace or charity or something that says, we know basically we're violating our own requirement, but we're not going to send him home without pay. It's a kindness, but that they could just as easily have said, security clearance suspended, go home now. Are you saying that doing that waives any right of the agency to require security clearance in that position from then on? I would use the word this way. I would use the concept of waiving the fact that they did. I think we have to step back and realize the agency was not required. There's no mandate from Congress that they must put him on indefinite suspension. It's a decision that they make. If they put my client, which they did, on this other grace, as the court said, they essentially said, you can do this job, and he did it well. He had outstanding reviews while he was doing this. And as the court has recognized in cases such as Kreiner's cited in my brief, that this is a big deal when you get suspended, you're not paid. You have a legitimate interest in employment. You said in your brief on page 20 that based on the record, it appears that the citing official did have the authority? Yes. Where in the record does that show? Well, I think... I got the whole record. Sure. Well, if you glean the fact that he had the authority to do that, then why is he the citing official? Why would he have to come in and allow us the opportunity to be heard? If he didn't have the authority to say, I can put you in another, I can decide I'm not going to indefinitely suspend you, I'm going to leave you in this position because you're doing a great thing for the agency. Some deciding officials have limited authority. True. It may well have been that whoever made the decision to let him come to Miami was a higher up. Somebody up above the deciding official who said, even though that position requires a security clearance, we're going to let him do it. Right. So I was just surprised that you concede that this deciding official did have authority. I would say that he... Fits into the footnote in the full MSPB opinion. Well, I guess maybe I mischaracterized what I'm trying to say. The agency didn't allow us to pursue and invoke the discretion as is set forth in the case. What's the due process problem? You might not have been able to depose the deciding official on whether or not he was going to exercise his discretion, but you had given the deciding official all your arguments. The deciding official knew exactly, page after page of your argument, that this gentleman had come into Miami, had performed beautifully in Miami, he ought to be allowed to continue to be in Miami. There wasn't any further information that you're going to give the deciding official, right? Well, I would have been able to develop the record with a deposition. A record saying what you'd already said. Right. I mean, due process doesn't mean that you get to say the same thing over and over and over again. No, I understand that, Your Honor, but the deciding official said he didn't know what he was doing. He had no idea what he was doing, even after he saw our written submissions. He didn't say he had no idea what he was doing. He said he wasn't familiar until you gave to him in writing, he wasn't familiar with Mansfield's experiences in the Miami office, and probably no reason why he should have been. He wasn't in that line of command. But he never denied that he had read the materials that you submitted to him. I understand that, but I think to go back to what the judge, the administrative judge allowed us to do and not allowed us to do, greatly impacted what I could have developed on the record and questioned him and said, well, look what he's doing. And the argument we were trying to make there. Well, let me back up. What do we do with a situation that comes out of the Griffin case, our Griffin case after Egan and after Griffin, there's a subsequent case after Griffin, and it deals with a situation of whether or not there's a specific agency regulation that says in these circumstances, if we can, we will put him in a position, right? We won't suspend him. And there is no such regulation in this case, right? You're saying that the agency didn't have some sort of regulation that we have to put him in there or we can't? I mean, the case law is Griffin and then Lyles decided on the same day as Griffin. Lyles goes to the situation where there was an express regulation of the agency that says, you know, in this circumstance, that we'll put you in the other jail if we have to. And our case law says that unless there is a regulation like that, the board has no jurisdiction, no power to look at. I understand what the question is. So if the board has no power, there's no due process. Well, I think the board did say that in BULMA. I think the board said have an opportunity to invoke the discretion. What I'm saying is the only way to square BULMA with Griffin and Lyles is to say that BULMA only applies in a situation where there is a regulation that confers on the employee this entitlement to be considered for a job, in which case then you have to have due process. Well, I would suggest to the court that our ability not to pursue that deposition and opportunity to build a record. I mean, if there's no jurisdiction in the board to consider, then there's not going to be any opportunity for a hearing because there's no jurisdiction. You could have determined the regulation. Sure. I would just say to the court that since we didn't have an opportunity to develop that in the record, I guess... I mean, the law required you when you come up to the MSPB to say, if I want a hearing on this topic, I need to be able to demonstrate there's a regulation there that the agency will have to follow. And you could have developed the existence of the regulation if it existed. Yeah. Yeah, you didn't need... That process you have to do on your own. Yeah, I think it's very difficult to do some of these things that the court's suggesting here. I guess I'm looking at it very narrowly. I mean, finding out whether or not the Department of Justice or DEA has such a regulation takes a few minutes at your computer. I looked and it's not there. And you have a finding in this record that it's not there. There are no such regulations. I guess I would ask... For me, I don't see how you get past our case law, Griffin and Wiles. I understand. Right. I understand what the court said. I just think it really bears down to the fact at what point does the agency... You can't go into an employee's office and drop a paper on their desk that you're indefinitely suspended. You can't even challenge it. You can't even develop the record. You can't even see if there's something else that I can do or another position when they've obviously put him in that position for a significant period of time. I think it's an issue for the court to maybe... How do you deal with the overarching policy articulated in Egan and Berry about the governmental interest? I understand that. I would say that I think the government's position is that we're trying to somehow dig into the merits of the underlying issue on the security suspension. That's not what we're doing here. We're just saying, look, we want to stay working. I'm doing this job. I've been in this position for a long time. And I'm doing what you want me to do. And we can go to June of 2014 and determine that. He faced two removal proceedings. In this sequence, I gather at some stage in the game, when the security clearance issue was finally adjudicated adversely to him, he was removed? He was not removed, Your Honor. There was a proposal to remove him for the security clearance being eventually adjudicated not in his favor in June of 2014. He actually retired, or I should say he resigned from the agency in December 2014. Okay. Just so you know, you're in here every five or 12 hours. Okay. I'll just reserve that and answer any other questions. Ms. Devine. Ms. Devine. Good morning, Your Honors. And may it please the Court. As Your Honor mentioned, this case fits squarely within this Court's jurisprudence. In this Court and this Board's review, Mr. Mansfield's indefinite suspension is limited to whether the security clearance or eligibility for access to national security information was revoked, whether that was a requirement of his position, and whether the procedures of Section 7513 were followed. Egan, Chaney, Hess, Gargiulo, and Wiles. Can I ask, under what authority did you allow him to stay in the job after the security clearance was revoked? Not permanently, but the initial one. Right. So under Jones, the agency has the discretion to indefinitely suspend while the agency was in the process of investigating the security clearance and whether the security clearance should be revoked. But this Court has found in Skies that the agency has the discretion to consider options for the employee, and that it's within the agency's discretion to do so. And here, I want to emphasize that those options include leaving that person in place? Right. So I want to step back and explain what happened here. What happened here is that the agency proposed to revoke Mr. Mansfield's security clearance and had its internal procedures to make its final decision making. And during that time period, Mr. Mansfield remained a special agent, but he wasn't doing the duties as a special agent. They found something for him to do. They found him to do some recruiting. They gave him some duties with regard to... I think it's clear in this case that all jobs require security clearance. Yes, that's right, Your Honor. I think that's what goes to run on. I understood him to be asking, well, if all jobs require security clearance, once his security clearance has been suspended, how can he be employed? Well, so his security clearance had not been finally revoked. So I want to emphasize that this was the agency procedure to determine whether his security clearance should be revoked. Once his security clearance was finally revoked, this agency began indefinite suspension proceedings and pursuant to 7513 to take an adverse employment action. As I understand it, tell me if I'm wrong, that in February or February 1st, I think, in 2013, his access to national security information was in fact revoked while the agency was undergoing the consideration of whether that should be made permanent. Well, it was preliminarily suspended. The agency hadn't made its final determination as to whether it should be revoked. Does suspension mean that he cannot access that information? NCIS, whatever it is, I don't know. Well, I mean, he did not have, he could not, his eligibility for access to national security information was preliminarily suspended. So yes, he couldn't access national security information now. But he's doing, is he not still doing a job that allows him access to that information? The information that he has access to are recruits' files. The non-drug related inventory information. Limited sort of, limited duties he was having. The agency was trying to find something for him to do while he received his due process. This is not an agency decision. I should have been able to do that right down to the time I retired. Right, well, that was not, the agency was not putting him in a position, a permanent position that was something that they could keep him on doing. They were providing him due process. And because they were providing him due process, they didn't indefinitely suspend him immediately. They provided him, again, something to do. They gave him some work to do and they paid him for doing that work. They could have suspended him on the same day. Absolutely they could have. That they made the security clearance initial decision. Right, but this court in Skies has said that the agency has the discretion to attempt to find something for the employee to do. It's not waived. It hasn't lost its ability to revoke. Well, you could have suspended me, but you didn't. You kept me on the job, right? And I have a property interest in my job. And then in June you took my job away. And you can't do that without giving me due process. Well, certainly he would need due process. He was given due process in 7513. He was given the procedures of 7513 before he was removed. The agency gave him due process before he was indefinitely suspended. The agency gave him due process before he was indefinitely suspended. Well, he's saying that under Buhlna, the board says due process includes the opportunity to confront my deciding official and to plead my case to a deciding official. But he's not, sorry, continue. Isn't that what Buhlna says he can do? Well, he did have the ability to confront the deciding official. There is no dispute that 7513 proceedings were... But the number of questions he could ask him were limited. Right, but the... So the arguments he was... He was never making an argument below, and in his brief he actually admits that he does not make an argument that he was denied access to the deciding official with the authority to consider alternatives to the extent those alternatives existed. There is no argument made that the deciding official was the wrong deciding official. His argument was that when he wanted to depose Reid, he said, I want to depose Reid on four questions. And they said, no, you can only depose him on three questions. And the one question that was left behind was whether or not he could talk with Reid about whether or not he should have been left in this position of grace or whatever you want to call it. So the two things he's asking, he was asking the permission to depose the deciding official, were whether other positions were feasible and whether he could be kept on with his proceeding. And that involved reassignment of Mr. Mansfield to a permanent position and not necessarily just work that he was... He wasn't doing work as a physician. He was basically given work while he was on... He's saying, you know, and then you've got... You're looking at... You're going to suspend me. I'd like to talk about whether there's another job I could get or could I just be left where I was? Right, but those issues are not... He doesn't have a due process right to those questions because those questions would go to what the feasibility of reassignment would be, what the feasibility of his alternatives should be. And the board has no authority to... And the agency has... First of all, the agency has no requirement to do that. What do you rely on for the agency being able to say that it doesn't have any authority to look at that? Is this Griffin and Lyle? Griffin and Lyle test case after case that state that the agency cannot be compelled, absent statute or regulation, cannot be compelled to reassign or that those reassignment questions... In fact, I believe that Griffin uses the term feasibility of reassignment, that that's something that... Excuse me. That the agency is not required to do and that the board has no authority and no role to review that. So the issues that Mr. Mansfield wanted... He draws a distinction between being reassigned and being left where he was. Right, but what he wasn't... The thing is, he wasn't... When he was put in that position, I would stress that that was not a reassignment. That was not placing him in another position. He was still a special agent. He was still in that position as a special agent. He said, I'd like to... I'm a special agent with no capital on S and no capital on A because my security clearance has been suspended. But I want to remain on little S.A. He wanted to remain in doing duties that the D.A. found for him to do. The government found to be so satisfactory that they complimented him on the six, eight-month service he did. He said, I just want to get him to do more of that. Again, I believe this runs up into this court's jurisprudence as far as the alternatives to indefinite suspension. This court has held that it is within the agency's authority to indefinitely suspend an employee when his security and clearance is revoked or suspended. Excuse me. The board has no role in reviewing the alternatives to that removal or that suspension. What he's asking, in effect, is for the agency to consider alternatives and to permanently reassign him to some position, create some position that has some sort of duties that they come up with on a permanent basis. Is the process that the board is currently providing under BULNA restricted to those cases where you have a Liles-type regulation? I'm not aware of a board decision that involves, that would apply BULNA and that reasoning to a situation where there is a statute of regulation. I'm not aware of a board decision. Well, if you were affording the kind of process that's offered under BULNA in a circumstance where there was no Liles-like regulation, wouldn't you be exercising jurisdiction where you're not supposed to? I'm not sure. So the question is whether BULNA would apply. I assume you agree that after Eden, Griffin, and Liles say that the board doesn't have any jurisdiction, has no authority. There's no authority. No authority to even open its mouth absent a regulation such as there existed in Liles. Has no ability, has no authority to compel the agency to consider reassignment absent a statute of regulation. The subject matter is there is no, no jurisdiction means you can't do anything. You have to, like in the earlier argument, if we have no jurisdiction, we have to get up and leave. So what my question is, is how can the board in BULNA purport to offer due process rights except in a situation where the employee has been able to demonstrate that there's a Liles-type regulation that confers jurisdiction on the board to consider reassignment or being in another position? I think that would involve the Department of Justice  which we haven't done yet, and I'm not aware of a case where we've applied that. I'm not sure... BULNA is being argued to us as authorities as to why Mr. Mansfield has some due process rights here. He disagrees with the footnote or whatever it is in the full board opinion. I can think of a hypothetical where there would be some due process that would be a gloss on 7513. I can't think of one. I'm not prepared to say that BULNA was wrong. I think the idea that... I don't think we would disagree, but I, again, don't want to take a position for the Department of Justice, but I don't think we would disagree. What do you understand Griffin and Liles to be telling us about the board's authority in the circumstances of this case? Right. I don't think we would say as a matter of law that there would never be a situation where there would be a due process review because 7513 is part of the analysis, right? There are some due process... There's a due process law in 7513. The process that gets assigned to these types of cases flows out of EGAN, doesn't it? The Supreme Court says this is a circumstance in which there's very limited due process. Correct. That would be the security clearance revocation proceeding. And Griffin, our court, put a big gloss on EGAN. Right. And that would have to do with the suspensions or removal, right? That's what we have here. Right, yes. But I hesitate to say that there would never be a situation in which there would be an analysis of due process, but that would be within the confines of 7513. I don't want to say never. I can't think of a hypothetical in which that would be the case, but I don't want to make that kind of blanket statement. The Department agrees that the due process charts are restricted to those cases that get by, that are like Lyle's, who get by to pass Griffin. I would say the analysis, yes, the analysis is, as the court has held over and over in the Supreme Court, the analysis is whether the security clearance or eligibility for access to national security information is a requirement of the position and whether that was revoked and whether the procedures of 7513 were complied with. Absent a statute of regulation that require reassignment. We absolutely agree with that. Whether Buelna was adding a gloss onto that, I can't take a position specifically, but it would seem to me given the fact that the clear language of the court that it's limited as to what this court can review absent a statute of regulation, there can't be that much room for Buelna to apply. And in fact, I would argue that 7513 provides more than enough due process such that whatever due process that is right, that are concerned, are covered under 7513. I would also point out that the due process... You really should be arguing that at most it would be dicted. Yes, at most it would be dicted, Your Honor. That's right. The court doesn't need to reach that issue. What we have at issue here is a due process argument, but it's not a due process argument. What we have here is a situation where, as the board found, there was no claim for a due process violation. Even assuming Buelna applied, Buelna says you have to have the ability to invoke the discretion of the deciding official with the ability to consider alternatives if any existed. There was no argument. There was no claim stated that Mr. Mansfield did not have that right to invoke the discretion of the deciding official. What he wants to do is, after the fact, get discovery on... And by the way, he was allowed a lot of discovery, and he was allowed to depose the deciding official. This was not where all discovery was prevented. But what he was seeking to get access to and to get discovery on was whether transfer was feasible, whether keeping him on his current position was feasible. And those issues are not... Those are not the due process issues covered by Buelna. He admits in his brief, and you discussed that, that at most he has... And I see my time is up. At most he has the ability to invoke the discretion of the deciding official, and that's not in dispute. Thank you, Your Honor. Thank you. Thank you for watching the talk. I appreciate it. Just briefly, Your Honor, a few things I want to comment on counsel said. Getting back to the Griffin-Liles, it's not an issue of whether an agency is compelled to put somebody in another spot. It's whether or not we can get to the discretion of the deciding official to determine if they want to keep him there. This comes down to why we have a process. We have a process. We're proposing to definitely suspend you. You have an opportunity to be heard. Written response or oral response. And we want to keep you here. And then we want an opportunity to develop the record to see if possibly he can stay where he's at while he's doing this, while he's waiting. There's a reason to wait because he had this ARC event that was going on that wasn't decided until June of 2014. That's it. And the issue is not whether we proved to you today or proved to the court below that we would have prevailed with that. We didn't get the opportunity to do that. That's what this is all about. It might be a small, narrow thing of due process. The other thing is that counsel characterized that he was basically a recruiting coordinator. He did a lot more things. And I think you'll find that none of what we presented in our briefs has ever been controverted by the agency what he did. He handled a lot of sensitive things. He did a lot of things. They had no problem with what he was doing. But I really have nothing else  unless you have any questions. Thank you. Thank you, Aaron.